UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PAMELA Y. ABNER,

        Plaintiff,

v.

STATE OF WISCONSIN DEPARTMENT OF
WORKFORCE DEVELOPMENT, et al.,

        Defendants.

Case No. 24-cv-0865-bhl

## ORDER GRANTING MOTION TO DISMISS

On July 11, 2024, Pamela Abner, a Wisconsin Department of Workforce Development (DWD) employee, filed a *pro se* complaint against the DWD, Tasha Jenkins, Edgard Delgado, and Sherrie Bailey-Holland. (ECF No. 1.) On September 18, 2024, the Defendants moved to dismiss Abner's complaint. (ECF Nos. 6 & 7.) In response, Abner filed a motion to amend her complaint, which the Court granted. (ECF Nos. 8–10.) Her amended complaint asserts claims for violations of: (1) Title I of the Americans with Disabilities Act (ADA); and (2) the Wisconsin Fair Employment Act (WFEA). (ECF No. 10 at 1–2.) The Defendants have again moved to dismiss, arguing that the Eleventh Amendment bars Abner's Title I ADA claim and her WFEA claim fails because the statute does not provide her a private right of action. (ECF No. 12.) The briefing on the motion is now complete.[1] Because the Defendants are correct that sovereign immunity protects them from suit under the ADA and the WFEA does not provide a private right of action, Abner's complaint will be dismissed. Given Abner's *pro se* status, the Court's dismissal is without prejudice. The Court will allow Abner 30 days to file a second amended complaint that states plausible claims for relief. If an amended complaint is not received, the Court will dismiss this case based on Abner's failures to state a claim in her original complaint.

---

[1] Abner also filed a sur-reply brief. (ECF No. 15.) This was improper. *See* Civ. L. R. 7. As the non-moving party, Abner is not entitled to a sur-reply—sur-replies are appropriate only when there is a valid reason, such as a new argument in a reply brief. *See Meraz-Camacho v. United States*, 417 F. App'x 558, 559 (7th Cir. 2011). There is nothing improper about the Defendants' reply brief and, accordingly, the Court will not consider Abner's sur-reply.

## FACTUAL BACKGROUND[2]

Abner was an employee at the DWD in the Department of Employment and Training for more than 20 years. (ECF No. 10 at 2–3.) Around 2014, she was diagnosed with Multiple Chemical Sensitivity. (*Id.* at 3.) She also has a mental impairment. (*Id.*) These impairments limit her major life activities including "working, thinking, breathing, learning, and concentrating." (*Id.*) To accommodate her disabilities, her doctor recommended using an enclosed office and fragrance-free cleaning products. (*Id.*)

Abner was previously supervised by Director Carol Burgett, who "adhered" to Abner's doctor's recommended accommodations and thus moved Abner into an enclosed office space and refrained from using "Lysol products" in favor of organic products. (*Id.*) At some point, Abner's department appears to have relocated to "Job Center Central," and Burgett was no longer able to provide Abner with an enclosed office. (*Id.*) Burgett did, however, place Abner in a location away from printers, copiers, and the break room and placed "fragrance-free signage" in designated areas. (*Id.*) Abner's doctor then provided additional accommodation requests, including "purifiers" and "working from home." (*Id.*) Abner's request to work from home was denied. (*Id.*)

In 2019, as a response to the COVID-19 pandemic, all staff for the DWD began working from home. (*Id.*) In June 2021, the DWD began partially reopening some job centers. (*Id.*) COVID-19 spread widely throughout the building and Abner continued working full time from home. (*Id.*)

In 2021, Delgado was hired as Director, apparently in Burgett's place. (*Id.*) He reported directly to Jenkins. (*Id.*) Delgado "mandated that all staff will do 100% of all job duties and return back to the office full-time." (*Id.*) Abner made verbal and written complaints to Delgado and a former Supervisor "Ted" about "unfair workload" explaining that she "was the only employee doing 100% of the work." (*Id.*) Abner also notified Delgado about her previously approved accommodations, but he ignored her. (*Id.*) He continued to schedule her to work in the "resource room" and did not "mandate" the fragrance-free policy. (*Id.*) Abner constantly sent emails to management asking them to remind staff of the policy. (*Id.*) Delgado refused to work with Abner to accommodate her safety needs. (*Id.* at 4.) He also continuously refused her doctor's request that she be allowed to work from home and instead he sent her to the Milwaukee Women

---

[2] This Background is derived from Abner's complaint, ECF No. 10, the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

Correction Center (MWCC). (*Id.*) Representatives of the MWCC told Delgado that purifiers would not be allowed into the MWCC because of safety issues, but he still required Abner to go to the MWCC. (*Id.*)

On March 23, 2022, Abner filed a harassment claim against Ted Anderson, a Supervisor at the Job Center who reports directly to Delgado. (*Id.*) The complaint was apparently dismissed for insufficient evidence. (*Id.*) Abner also served as a representative on a co-worker's disciplinary investigation conducted by Delgado and DET Bureau Director Jenkins. (*Id.*)

On October 17, 2022, Delgado informed Abner that she would be transferred to a new location, "Job Center Southeast," beginning on November 2, 2022. (*Id.*) Abner had never worked at Job Center Southeast. (*Id.*) She had only briefly been at the location for mandatory meetings and occasional workshops. (*Id.*) Abner explained to Delgado that it was in her best interest to remain at Job Center Central and reminded him of her accommodation needs. (*Id.*) Delgado responded that "it does not matter what you say, you are going." (*Id.*)

On October 20, 2022, Abner made a verbal complaint about Delgado's behavior to Steve Laesch, the "DET Division Administrator Assistant." (*Id.*) Laesch advised Abner to file a written complaint "with HR/EEO." (*Id.* at 5.) Abner's complaint "allegedly was not investigated," which DWD later admitted in connection with an EEOC proceeding. (*Id.* at 5.)

On November 2, 2022, Abner arrived at Job Center Southeast, but none of her accommodations were in place. (*Id.*) About one or two hours into her work, she suffered an allergic reaction to an unknown toxin and could not complete her workday because the building was making her sick, and the DWD had not put her accommodations in place. (*Id.*) Delgado was aware of Abner's situation and sent her a text confirming that he had heard of something in the building and would "check with facilities." (*Id.*)

Abner then filed a complaint with the Equal Rights Division for failure to accommodate. (*Id.*) During her administrative proceeding, she alleged she had been constantly denied reasonable accommodation, including not be allowed to work from home. (*Id.*) The DWD's failure to accommodate her needs aggravated her emotional and situational stress. (*Id.*) Abner was required to use 780 Family Medical Leave Act hours due to the DWD's failure to accommodate. (*Id.*)

Abner then requested to be transferred to the Equal Rights Division. (*Id.*) Her request was denied, but Abner was moved back to Job Center Central and was told she would never have to work at Job Center Southeast again. (*Id.*) Abner returned to Job Center Central on March 6, 2022,

but no accommodations were in place. (*Id.* at 6.) She was also "immediately given regular duties without any time to get acclimated." (*Id.*) On March 13, 2022, Bailey-Hollands was hired as a new supervisor at Job Center Central. (*Id.*) Bailey-Hollands reports directly to Delgado. (*Id.*)

Two weeks after her return, Abner was investigated for an alleged disciplinary violation initiated by Delgado. (*Id.*) Abner constantly emailed management and human resources about DWD's failure to accommodate her. (*Id.*) She complained that some staff continued to violate the fragrance-free policy, making her sick at work. (*Id.*) When three new staff members were hired, Abner was scheduled to work alone in the resource room and not allowed to work with the new staff or to train them. (*Id.*) Abner complained but nothing happened, and all other staff were allowed to work in the resource room in pairs or with three staff working together. (*Id.*) Abner claims she was being isolated and experiencing adverse action. (*Id.*)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint must contain a "short and plain statement of the claim showing that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint "must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint survives a 12(b)(6) motion when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The complaint will be dismissed if it fails to allege sufficient facts to state a claim on which relief may be granted. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ANALYSIS

The DWD moves to dismiss Abner's complaint on grounds that the state of Wisconsin and its agencies have Eleventh Amendment immunity from suit for claims under Title I of the ADA. (ECF No. 12 at 4.) The DWD also asserts that the WFEA does not create a private right of action

for Abner to bring her claim in this Court. (*Id.*) Because the DWD is correct on the law, Abner's claims will be dismissed.

## I. The DWD Is Immune from Suit for Abner's Title I Claims.

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004). Title I specifically provides that a "covered entity" may not discriminate against "a qualified individual on the basis of disability" regarding "job application[s] . . . hiring, advancement, or discharge of employees, employee compensation, job training," and any "other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). A "covered entity" is "an employer, employment agency, labor organization, or joint labor-management committee." §12111(2). And employers are defined as "a person engaged in an industry affecting commerce" with either 15 or 25 or more employees, and "any agent of such person." §12111(5)(A). At first glance, the DWD, as Abner's employer, is a covered entity for purposes of the ADA.

But, as the DWD maintains, the Eleventh Amendment protects the state and its agencies from suits. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the States by Citizens of another State . . . ."[3] U.S. Const. amend. XI. This concept is known as "sovereign immunity," and it also protects an agency of the state, like the DWD. *See Nuñez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016). This immunity is not absolute, however, and is subject to three exceptions. First, Congress may affirmatively abrogate a state's immunity under Section 5 of the Fourteenth Amendment. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364 (2001). Second, a state, like Wisconsin, could waive its immunity and consent to suit in federal court. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000); *Blalock v. Ill. Dep't of Human Servs.*, 349 F. Supp. 2d 1093, 1096 (N.D. Ill. 2004) (citation omitted) ("A State may effectuate a waiver of its constitutional immunity by a state statute or constitutional provision, or by otherwise waiving immunity to suit in the context of a particular federal program."). Third, the immunity does not extend to an individual state official if the relief sought

---

[3] The text of the Amendment seemingly applies only to suits against a state by citizens of another state, but the United States Supreme Court has "extended the Amendment's applicability to suits by citizens against their own States." *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

is prospective equitable relief; that is, the complaint seeks only forward-looking non-monetary remedies. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908).

The DWD insists that none of the exceptions to its Eleventh Amendment immunity applies here. It correctly notes that the Supreme Court has confirmed that Congress did not abrogate the states' Eleventh Amendment Immunity in Title I of the ADA. *See Garrett*, 531 U.S. at 360. As a matter of binding Supreme Court precedent, the first exception therefore does not apply. As for the second exception, the DWD insists Wisconsin has not waived its immunity to Title I liability. Abner has cited nothing to suggest otherwise, and the Court is unaware of any such waiver. Accordingly, the second exception is also inapplicable. *See Kelsay v. Wis. State Pub. Def.*, No. 20-cv-1712-pp, 2022 WL 889389, at *5 (E.D. Wis. Mar. 25, 2022); *Henige v. Bd. of Regents of Univ. of Wis. Sys.*, No. 20-cv-6, 2021 WL 510403, at *9 (E.D. Wis. Feb. 11, 2021). The third exception is for suits against individual state officials seeking prospective equitable relief. *See Ex parte Young*, 209 U.S. at 159–60. Abner latches onto this exception in an attempt to survive dismissal. (*See* ECF No. 13 at 6.) She invokes *Ex parte Young* and argues that the holding in that case allows her to pursue her claims against the Defendants. (*See id.*) Abner's invocation of this exception fails, however, because Title I of the ADA only permits claims against entities not individual state actors. This exception to Eleventh Amendment immunity rests on the notion "that sovereign immunity does not apply [where] an official . . . acts unconstitutionally [because he] is 'stripped of his official or representative character.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 (1984) (quoting *Young*, 209 U.S. at 160). Abner's claim does not satisfy all of the requirements for this exception. A Title I claim cannot be brought against an individual state actor. *See Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999) ("[T]he ADA provides only for employer, not individual, liability."). Abner names several individuals as Defendants, and the ADA does not allow suits seeking to impose individual liability except in circumstances not present here. An individual can be sued under the ADA only where that individual defendant "independently meet[s] the ADA's definition of 'employer.'" *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279 (7th Cir. 1995). As mentioned above, an employer under the ADA is "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person."[4]  § 12111(5)(A). Even if Abner had pleaded facts alleging that the

---

[4] While the "any agent" language seemingly suggests that individuals could be liable under the ADA, this language was actually meant to ensure that courts could impose *respondeat superior* liability to make employers liable for the

individual Defendants are responsible for the actions leading to her claim, the facts alleged in the complaint do not encompass a situation in which such an individual could be held liable under the ADA. *See Silk*, 194 F.3d at 797 n.5; *Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995) ("[T]he ADA's definition of 'employer,' . . . is simply a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents."). Therefore, the third exception to sovereign immunity does not apply. Because none of the exceptions could plausibly apply, Abner has failed to state a claim under Title I of the ADA.

## II. The WFEA Does Not Create A Private Cause of Action.

The WFEA prohibits employment discrimination on the basis of various attributes, including disability. Wis. Stat. §111.321. Any violation may be investigated the DWD's Equal Rights Division. §111.39; *see also Staats v. County of Sawyer*, 220 F.3d 511, 516 (7th Cir. 2000). Accordingly, the Equal Rights Division is "the *exclusive* forum" to bring a WFEA claim; it "does not create a private right of action . . . ." *Staats*, 220 F.3d at 516. Wisconsin legislative action confirms this understanding. In 2009, the WFEA was briefly amended to allow a private right of action. *Sharp v. Stoughton Trailers, LLC*, 15-cv-598-jdp, 2016 WL 3102241, at *2 (W.D. Wis. June 2, 2016). But that amendment was repealed in 2012. *Id.* The legislative history confirms that individuals do not have a general private right of action under the WFEA, unless the discrimination occurred between July 1, 2009 and April 19, 2012. *See id.* at *3. As the alleged discrimination began post-2020, Abner's claims do not fall within this limited exception. The Court will grant Defendants' motion to dismiss Abner's WFEA claim.

## CONCLUSION

For the foregoing reasons, the DWD's motion to dismiss Abner's complaint is granted. Because Abner is proceeding without a lawyer, the Court will allow her the opportunity to file an amended complaint describing, if she can, plausible claims. If she decides to proceed with an amended complaint, Abner should draft her proposed amended complaint as if she is telling a story to someone who knows nothing about his situation. This means that she should explain: (1) what happened to make her believe she has a legal claim; (2) when it happened; (3) who did it; (4) why;

---

acts of their employees and not necessarily to make the individuals themselves liable. *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995) (citing *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994)). Moreover, the type of prospective equitable relief Abner seeks is "only obtainable from an employing entity, not from a mere individual," thus even if Abner could sue a state official, that official would not be able to provide the relief sought. *See id.* (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994)).

and (5) how the Court can assist her in relation to those events. Abner should set forth her allegations in short and plain statements, focusing on the *facts* of her case rather than abstract legal terms. She should ensure that her amended complaint can be understood by someone who is not familiar with the facts of her case. And she should name as defendants *only* those specific individuals or entities who are involved with the facts of her case. Abner is advised that her amended complaint must include the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, ECF No. 11, is **GRANTED.**

**IT IS FURTHER ORDERED** that, if Abner wishes to proceed with this lawsuit, she must file an amended complaint. The amended complaint must be filed with the Court on or before **February 7, 2025**. If the Court does not receive Abner's amended complaint by that date, the case will be dismissed for Abner's failure to prosecute pursuant to Civil L. R. 41(c).

Dated at Milwaukee, Wisconsin on January 8, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge